**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN SEBASTIAN QUICK,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF MISSOURI – COLUMBIA and ROBERT J. TRULASKE, SR. COLLEGE OF BUSINESS,<br><br>Defendants. | Civil Action No. 21-19282 (GC) (TJB)<br><br>**MEMORANDUM OPINION** |

**CASTNER, U.S.D.J.**

**THIS MATTER** comes before the Court upon Plaintiff's objections to Magistrate Judge Tonianne J. Bongiovanni's Report and Recommendation (*see* ECF No. 32) that recommends that Plaintiff's claims be dismissed with prejudice pursuant to Federal Rule of Civil Procedure ("Rule") 41(b) for failure to obey court orders and to prosecute the case. The Court has carefully considered Plaintiff's submissions and decides this matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons outlined below, and other good cause shown, the Court **ADOPTS** Judge Bongiovanni's Report and Recommendation (*see* ECF No. 32) and, therefore, Plaintiff's claims are **DISMISSED** with prejudice.

**I.    BACKGROUND**

On October 23, 2021, Plaintiff John Sebastian Quick ("Quick"), a New Jersey resident then-represented by counsel, filed the Complaint in this case against Defendants University of

Missouri – Columbia and the Robert J. Trulaske, Sr. College of Business.[1] (ECF No. 1.[2]) Quick asserted claims for breach of contract and breach of the implied duty of good faith and fair dealing stemming from Defendants' alleged "failure to honor the . . . agreement that [P]laintiff would be employed by [D]efendants for a period of at least one year." (*Id.* ¶¶ 1-3, 20-27.) Quick claimed that Defendants had hired him in or around July 2015 to work at the University as a research assistant and student employee and then fired him without cause in October 2015 after Quick had traveled to New Jersey (and was absent for an extended period) to receive care for injuries he sustained in a 2013 car accident in Australia. (*Id.* ¶¶ 9-18.)

Two weeks after Quick filed the Complaint, Quick's lawyers moved to withdraw as counsel for Plaintiff, writing that the relationship had broken down and also that Plaintiff had failed to pay the firm the initial retainer as promised. (ECF No. 3.) On November 17, 2021, the Court issued an Order giving Plaintiff approximately two weeks to object to his counsel's request to withdraw and, if no objection was submitted, until December 27, 2021, to retain new counsel or be deemed *pro se*. (ECF No. 5.) No objection was received from Plaintiff and no new counsel appeared on his behalf.

After obtaining an extension, Defendants moved on January 27, 2022, to dismiss the Complaint on several grounds: that the Court lacked personal jurisdiction over Defendants; Plaintiff's claims were time-barred; and Plaintiff had failed to state a claim under either New Jersey or Missouri law. (ECF No. 13.)

On February 7, 2022, Plaintiff's counsel (who had previously moved to withdraw) sent a letter to the Court that stated that the firm had "been discharged" and that Plaintiff intended to

---

[1]   The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.

[2]   Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

"continue th[e] litigation on his own." (ECF No. 14.) Counsel wrote that Plaintiff was "expect[ed] . . . [to] contact the Court" in the next day or so. (*Id.*) The Court then received a handwritten letter from Plaintiff requesting an extension of time to respond to the pending motion to dismiss and/or appoint *pro bono* counsel. (ECF No. 16.)

On February 18, 2022, the Court issued a Letter Order noting confusion as to whether Plaintiff had in fact discharged his counsel and requiring counsel to renew the formal motion to withdraw as well as providing Plaintiff an opportunity to advise whether he consented or objected to the withdrawal. (ECF No. 17.) Plaintiff's counsel then renewed the motion to withdraw, writing that counsel had met with Plaintiff after receiving the motion to dismiss and that Plaintiff had expressed a desire "to respond to the motion to dismiss by himself" and informing counsel that they were "being discharged." (ECF No. 18-1 at 2.) Counsel underscored that Plaintiff was "in complete disagreement about the course of action to be taken." (*Id.*) Plaintiff did not submit anything in response to the motion despite the Court suggesting that he do so.

On May 31, 2022, the Court granted Plaintiff's counsel's motion to withdraw. (ECF No. 21.) The Court noted that Plaintiff had not advised whether he consented or objected to counsel's withdrawal. (*Id.* at 1.) Instead, Plaintiff had filed a document titled "Draft Witness Statement of Diogenes of Sinope."[3] (*Id.*) Because the Draft Witness Statement was irrelevant to the pending motion, the Court had it stricken from the docket. (*Id.* at 1-2.) The Court then reinstated Defendants' motion to dismiss and set an August 19, 2022 deadline for Plaintiff's opposition and asked the parties to submit *ex parte* settlement statements by July 7, 2022. (ECF No. 22.)

On August 8, 2022, after not receiving a settlement statement from Plaintiff, the Court set a telephonic status conference for September 13, 2022, to discuss the possibility of settlement.

---

[3]   "Diogenes of Sinope" appears to have been a Greek philosopher who lived in the fourth century B.C.E.

3

The Court believed this appropriate "in light of Defendants' settlement position." (ECF No. 24.) Defendants' motion to dismiss was administratively terminated pending this anticipated settlement discussion. (ECF No. 23.)

Plaintiff failed to appear at the telephonic conference on September 13, even though notice of the conference had been sent to Plaintiff by mail (and had not been returned). (ECF No. 24 at 1-2.) The Court remained on the conference line for an hour on September 13 in the event Plaintiff had been simply late to join the call. (*Id.*) As a result of Plaintiff's non-appearance, the Court on September 20, 2022, issued a Letter Order to Show Cause. (*See generally id.*) In the Order, the Court directed Plaintiff to appear in person on October 11, 2022, to show cause "why sanctions, including the dismissal of his Complaint with prejudice, should not be entered against him." (*Id.* at 2.) Plaintiff was also directed to submit, by October 4, a written explanation for his non-appearance. (*Id.*)

The Order was sent by certified mail to Plaintiff's registered address, but it was returned to the Court as undeliverable. (ECF No. 25.) A show cause hearing was opened on October 11, 2022, but was concluded shortly thereafter due to Plaintiff's failure to appear. (ECF No. 27.)

On October 12, 2022, the Court issued a Letter Order explaining that Plaintiff had not submitted anything or been in contact with the Court since March 18, 2022, nearly seven months earlier. (ECF No. 26 at 1.) To give Plaintiff an opportunity to provide some indication as to his intentions, the Court noted that it would mail and email its Order to Plaintiff. (*Id.* at 1-2.) The Order stated that Plaintiff had until October 21 to submit a written update and that failure to comply might result in dismissal of Plaintiff's Complaint with prejudice. (*Id.*) The Order emphasized that, pursuant to the Local Civil Rules, Plaintiff had a duty to file a notice of address change with the Court. (*Id.* at 2.) The October 12, 2022 Letter Order sent by certified mail to Plaintiff was returned as undeliverable. (ECF No. 30.)

4

On October 19, 2022, the Court received an email from an address registered to "sinope.diogenes" and signed by "Διογενης ο Σινωπευς," which attached a letter, also signed by "Διογενης ο Σινωπευς." (ECF No. 29 at 2.) In an October 27, 2022 Letter Order, the Court explained that it was unsure but presumed the October 19 email and attached letter came from Plaintiff in the present case. Plaintiff appeared to be asking that an individual named "Louis Thompson" be granted leave to appear *pro hac vice*, even though the email stated that Mr. Thompson's law "license ha[d] expired." (*Id.*) To the extent that the email and letter were from Plaintiff, the Court denied the request that Mr. Thompson be granted leave to represent Plaintiff. (*Id.* at 3.) Mr. Thompson had submitted nothing and had not appeared and, even if he had, the Court could not grant the request if Mr. Thompson did not have a valid law license. (*Id.*)

Still hoping to allow the case to advance, the Court renewed its directive to Plaintiff that he file by November 18, 2022, a written response to the Court's September 20, 2022 Letter Order to Show Cause. (*Id.*) Also having noted potential mental health concerns in Plaintiff's correspondence, the Court advised him that if he sought a stay to obtain a psychiatric diagnosis, he could submit any relevant medical records or a doctor's letter directly to the Court. (*Id.* at 4.) Finally, the Court reiterated that Plaintiff needed to update and maintain a valid address because the Court is not in the practice of sending courtesy emails. (*Id.* at 5.) The October 27, 2022 Letter Order sent by certified mail to Plaintiff was returned as undeliverable. (ECF No. 31.)

Over a month after Plaintiff's extended deadline of November 18, 2022, to respond to the Court's Order to Show Cause had passed, Magistrate Judge Tonianne J. Bongiovanni issued the December 12, 2022 Report and Recommendation (the "R&R") that recommends that Plaintiff's claims be dismissed with prejudice. (ECF No. 32.)

Judge Bongiovanni noted that the Court had not received a formal response to its Order to Show Cause from Plaintiff and, instead, had received three emails from "Sinope" in early

5

November 2022, "at least two of which appeared to include pictures of Plaintiff urinating on a [statue], and one of which appeared to request suggestions on how to proceed, [and] none of the emails provided the required response." (ECF No. 32 at 4.)

Analyzing the factors set forth by the United States Court of Appeals for the Third Circuit in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984), Judge Bongiovanni concluded that that the factors, on balance, supported dismissal of Plaintiff's claims with prejudice. Judge Bongiovanni found that

> Plaintiff has failed to take the steps necessary to move this case forward or to comply with his duty under the Local Rules to provide the Court with his current address. Plaintiff was afforded ample time to comply with the Court's Orders, update his address and submit a response to the Letter Order to Show Cause of September 20, 2022. Plaintiff, however, has failed to do so. This matter cannot proceed without Plaintiff's compliance and participation.

[(*Id.* at 9-10.)]

The parties were given fourteen days, pursuant to Fed. R. Civ. P. 72(b)(2), to submit any objections to Judge Bongiovanni's proposed findings and recommendations. The R&R was both mailed and emailed to Plaintiff. (*Id.* at 10.)

On or around January 9, 2023, the Court received via mail what presumably was Plaintiff's objection to the R&R. (ECF No. 34.) The objection was a series of printed emails, with handwriting on the emails, that did not identify any error in Judge Bongiovanni's findings and recommendation. (*Id.*) Instead, the emails were from "Diogenes of Sinope – Cosmopolites" and largely incoherent, referencing "Article 53 of the Vienna Convention," "reassociative identity disorder," and other scattered terms and documents. (*Id.*)

On or around January 23, 2023, the Court received via mail a further document from "Diogenes of Sinope – Cosmopolites" titled "Objections, Attempted Clarifications, and/or Request(s) for Reconsideration." (ECF No. 37.) Again, the document did not identify any errors

6

in Judge Bongiovanni's R&R and is at times incoherent. It starts by stating that "Diogenes . . . attempts to show some American antecedents of the rebirth of an ancient legal philosophy, and . . . attempts to show how and why he wishes to continue." (*Id.*) The first section is titled "Διογενης' Objections," the second section "Tertium Quid," and the third section "A Brief American Background to the Revival of Ancient Legal Cynicism," and none of these sections appear to be relevant to the present case. (*Id.* at 1-5.) The fourth and final section, "Quick's Argument – THIS LITIGATION AGAINST UNIVERSITY OF MISSOURI," is somewhat more on point, and states that Plaintiff "was deprived of the opportunity to attend or be heard at previous hearings either by local courts failing to send emails or by obstruction of justice and perversion of process when an ex-police officer likely deleted (an) email(s) containing Zoom hearing link(s)." (*Id.* at 6.) Plaintiff appears to ask for "a fixed 90-day stay . . . to obtain further diagnosis either in the United States or Australia" and mentions an "extremely difficult family situation" and "chronic lower back and spinal pain." (*Id.*) Attached to what Plaintiff submitted was a purported October 9, 2021 "Affidavit of Pierre-Yves Turrelier" that appears totally irrelevant and claims to be from the French attaché to the Ministry of Education in Vietnam. (*Id.* at 7-10.)

Finally, on or about April 18, 2023, the Court received an email from Plaintiff that is addressed as "A Letter to the King of the Platonic State of New Jersey, and his subjects, on a Without Prejudice Basis." (ECF No. 40.) The email references Rutgers Law School and the New Jersey Attorney General's Office, but has no apparent relevance to the present case. (*Id.*)

II. **LEGAL STANDARD**

"Within 14 days after being served with a copy of the recommended disposition [by a magistrate judge to dismiss a case], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2).

"If a party objects timely to a magistrate judge's report and recommendation [dismissing a case], the district court must 'make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (quoting 28 U.S.C. § 636(b)(1)); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to.").

"If a party does not object timely to a magistrate judge's report and recommendation, the party may lose its right to *de novo* review by the district court." *City of Long Branch*, 866 F.3d at 99-100 (citing *Nara v. Frank*, 488 F.3d 187, 194 (3d Cir. 2007)). Even then, "[t]he authority and the responsibility to make an informed, final determination . . . remains with the [district court] judge," and "a district court should 'afford some level of review to dispositive legal issues raised by the report.'" *Id.* at 100 (first quoting *Mathews v. Weber*, 423 U.S. 261, 271 (1976); and then quoting *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)). This level of review has been "described . . . as 'reasoned consideration.'" *Id.* (quoting *Henderson*, 812 F.2d at 878).

### III.  DISCUSSION

The Third Circuit Court of Appeals has acknowledged that it "do[es] not have a 'magic formula' or 'mechanical calculation' to determine whether . . . dismissing a plaintiff's case" is appropriate. *Hildebrand v. Allegheny Cnty.*, 923 F.3d 128, 132 (3d Cir. 2019) (quoting *Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008)). Although "[d]ismissal is a sanction rightfully in [a] district court's toolbox," and the Third Circuit "has not hesitated to affirm . . . dismissals in appropriate cases," dismissal with prejudice remains "an 'extreme' sanction" that should be a sanction of last resort." *Id.* (quoting *Poulis*, 747 F.2d at 867 n.1).

Under Rule 41(b), a district court may dismiss an action if a litigant has failed to prosecute or comply with a court order. *See* Fed. R. Civ. P. 41(b). Prior to such dismissal, a district court

8

must engage in the multi-factor balancing test stated in *Poulis v. State Farm Fire & Casualty Co.*, which requires the court to weigh:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.
>
> [747 F.2d at 868 (emphases removed).]

"Each factor need not be satisfied for the trial court to dismiss a claim." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 221 (3d Cir. 2003).

Although Plaintiff's objections were submitted well beyond the 14-day period set forth in the Federal Rules of Civil Procedure as well as in the R&R itself, the Court has carefully reviewed *de novo* the record, the proposed findings and recommendation of Judge Bongiovanni, as well as Plaintiff's objections. Following this careful review, the Court is persuaded that Plaintiff's conduct, or lack thereof, warrants dismissal of this case under Rule 41(b). During the course of the past two-and-a-half years, Plaintiff has failed to meet multiple deadlines and court orders and has failed to offer any reasonable explanation. Instead, Plaintiff has sent a series of strange and, at times, inappropriate communications to the Court that support the conclusion that he is either unwilling or unable to prosecute the matter. Accordingly, the Magistrate Judge's R&R will be adopted and Plaintiff's claims will be dismissed with prejudice.

### A. Extent of Plaintiff's Personal Responsibility

The Magistrate Judge found that Plaintiff, after not appearing for the September 13, 2022 telephonic conference and providing no explanation for his absence, had a personal responsibility to respond to the Court's September 20, 2022 Letter Order to Show Cause and to keep his current address registered with the Court pursuant to Local Civil Rule 10.1(a). (ECF No. 32 at 6.) Indeed,

Local Rule 10.1(a) states that "[f]ailure to file notice of address change may result in the imposition of sanctions by the Court." As a result, the Magistrate Judge concluded "that this factor weighs strongly in favor of dismissal with prejudice." (*Id.* at 7.)

Based on this Court's independent review, it agrees that Plaintiff, proceeding *pro se* after the withdrawal of his counsel (to which Plaintiff did not object), bore personal responsibility to keep the Court apprised of his current address, to attend scheduled conferences, and to respond to the Court's Order to Show Cause and appear at the Show Cause hearing. Plaintiff's failure to do so was solely his fault and this factor weighs in favor of dismissal with prejudice. *See Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) ("With respect to [plaintiff's] personal responsibility, the District Court recognized that because [plaintiff] is proceeding *pro se*, his failure to comply with its orders could not be blamed on counsel."); *see also Briscoe*, 538 F.3d at 258-59 (3d Cir. 2008) ("[I]t is logical to hold a pro se plaintiff personally responsible for delays in his case because a pro se plaintiff is solely responsible for the progress of his case . . . ."); *McLaren v. New Jersey Dep't of Educ.*, 462 F. App'x 148, 149 (3d Cir. 2012) ("[W]e conclude that the District Court did not abuse its discretion in dismissing the case as a sanction for [plaintiff's] failure to provide the Court with an accurate mailing address.").

In one of his objections, Plaintiff appears to blame the Court for not sending him emails as well as an "ex-police officer [who] likely deleted (an) email(s) containing Zoom hearing link(s)." (ECF No. 37 at 6.) The Court cannot tell who this "ex-police officer" may be, and it ultimately makes no difference because even if someone deleted an email with information about the September 13, 2022 telephonic conference, it does not explain why Plaintiff failed to respond in writing to the Order to Show Cause, did not appear for the in-person Show Cause hearing, and did not keep his address current with the Court. Moreover, the Court is under no obligation to email Plaintiff personally, and even then, the majority of Orders in this case were both mailed and

10

emailed to Plaintiff. Despite the Court doing so, Plaintiff still failed to comply or to explain his conduct.

Finally, Plaintiff also appears to ask (after his claims were recommended to be dismissed) for a 90-day stay "to obtain further diagnosis either in the United States or Australia." (*Id.*) The Court has waited more than 90 days since this request was made, and nothing further has been provided by Plaintiff to substantiate any medical condition or to support any request for a stay. The Court's October 27, 2022 Letter Order expressly informed Plaintiff that if he sought a stay to obtain a psychiatric diagnosis he could submit any relevant medical records or a doctor's letter directly to the Court. (ECF No. 29 at 4.) Plaintiff did not do so, despite the passage of nine months. The Court does not see any basis for further delay at this point. *See Emerson*, 296 F.3d at 191 ("[Plaintiff] was given the opportunity to substantiate that he was unable to proceed for medical reasons and he failed to do so. Given his behavior over the more than two years that the case was pending, the District Court had no indication that [plaintiff] would prosecute his case as opposed to seek additional stays.").

## B. Prejudice to Defendants

The Magistrate Judge found that Plaintiff had "abandoned his duty to prosecute this case and bring it to resolution" and, "[a]ccordingly, requiring any putative Defendants to proceed in this context would be prejudicial, and this . . . factor favors the dismissal of Plaintiff's claims with prejudice." (ECF No. 32 at 7-8.) The Court agrees that this factor favors dismissal. Although the case did not advance to the stage where Plaintiff withheld discovery or engaged in other actions that deprived Defendants of the opportunity to fully prosecute their defense, as the Magistrate Judge recognized, Plaintiff's conduct indicated an unwillingness to take even the basic steps necessary for the claims to be heard: failing to appear before the Court, failing to respond to Orders, and failing to keep a current address. In view of this conduct, requiring Defendants to have to

11

expend further time and resources on the matter would constitute prejudice. *See Adams v. Trustees of New Jersey Brewery Employees' Pension Tr. Fund*, 29 F.3d 863, 874 (3d Cir. 1994) ("Prejudice need not be 'irremediable harm . . . .'" (quoting *Curtis T. Bedwell & Sons, Inc. v. Int'l Fid. Ins. Co.*, 843 F.2d 683, 693 (3d Cir. 1988)).

### C. History of Dilatoriness

The Magistrate Judge found that "Plaintiff's history of dilatoriness is clear from the record" and "this . . . factor supports the dismissal of this matter with prejudice." (ECF No. 32 at 8.) The Court agrees and finds that, as in *Poulis*, "this litigation has been characterized by a consistent delay" on Plaintiff's part. 747 F.2d at 868. When Plaintiff's counsel moved to withdraw only two weeks after filing the Complaint claiming that the relationship with Plaintiff had broken down, Plaintiff did not file any response despite the Court providing an opportunity to do so. (ECF Nos. 3 & 5.) When Plaintiff's counsel renewed the motion to withdraw at the Court's direction, Plaintiff did not advise whether he consented or objected despite the Court providing such an opportunity. (ECF Nos. 17 & 18.) When the Court ordered Plaintiff to submit an *ex parte* settlement statement by July 7, 2022, Plaintiff did not do so. (ECF Nos. 22 & 24.) When the Court ordered the parties to appear on September 13, 2022, for a telephonic conference, Plaintiff did not appear. (ECF No. 24.) When the Court entered the Letter Order to Show Cause on September 20, 2022, Plaintiff did not submit a written response or appear at the Show Cause hearing. (ECF Nos. 26 & 27.) When the Court extended until November 18, 2022, the deadline for Plaintiff to respond to the Letter Order to Show Cause, Plaintiff did not provide a formal response. Instead, Plaintiff sent emails under a different name "at least two of which appeared to include pictures of Plaintiff urinating on a [statue]." (ECF No. 32 at 4.) On this record, the Court agrees that Plaintiff's history of dilatoriness is apparent and well-documented, and this factor favors dismissal.

### D. Whether Conduct Was Willful or in Bad Faith

Although the Magistrate Judge did not find that Plaintiff had acted in bad faith, she found that his conduct was willful because Plaintiff "indisputably received [the Court's Orders] by email." (*Id.* at 8.) The Court agrees. Plaintiff was sent several Orders by both email and certified mail, and yet he failed to comply with the Court's directives despite repeated opportunities to do so. This conduct is properly deemed willful and weighs in favor of dismissal. *See Emerson*, 296 F.3d at 191 ("The District Court found, however, that [plaintiff's] conduct in failing to comply with the court's orders and in dragging the case out was willful and not merely negligent or inadvertent. The record supports this conclusion.").

### E. Effectiveness of Sanctions Other Than Dismissal

Because "Plaintiff has failed to proceed as directed," the Magistrate Judge found "that no lesser sanction than dismissal of Plaintiff's claims with prejudice would be effective." (*Id.* at 8-9.) The Magistrate Judge also found that monetary sanctions were unlikely to be an effective alternative because Plaintiff is proceeding *pro se*. (*Id.* at 8.)

Plaintiff did not file an application to proceed *in forma pauperis* and did not submit evidence of his financial status, so the Court cannot say with absolute certainty that he would be unable to pay any monetary sanctions simply because he is *pro se*. Nevertheless, Plaintiff's *pro se* status combined with other evidence in the record supports the inference that monetary sanctions would likely not be a viable form of alternative sanction in the case, namely, (i) when Plaintiff's counsel moved to withdraw it was noted that Plaintiff had been unable to pay the initial retainer fee, and (ii) Plaintiff brought the underlying suit from the termination of a contract where he worked as a research assistant and student employee. *See Briscoe*, 538 F.3d at 262-63 ("[W]here a plaintiff is proceeding *pro se*, and moreover, is proceeding *in forma pauperis*, we have upheld

the District Court's conclusion that no alternative sanctions existed because monetary sanctions . . . 'would not be an effective alternative.'" (quoting *Emerson*, 296 F.3d at 191)).

Because of Plaintiff's record of unresponsiveness, alternative sanctions other than dismissal would be futile because Plaintiff has been warned that he could be compelled to pay a monetary penalty or have his case dismissed and yet has failed to meaningfully participate in and prosecute this case. *See Joyce v. Cont'l Airlines, Inc.*, Civ. No. 09-2460, 2011 WL 2610098, at *2 (D.N.J. June 15, 2011), *report and recommendation adopted*, 2011 WL 2607110 (D.N.J. June 30, 2011); *see also Mindek v. Rigatti*, 964 F.2d 1369, 1375 (3d Cir. 1992) ("The district courts cannot, and should not, tolerate unjustifiable delays and the expenditure of irreplaceable judicial resources caused by litigants, *pro-se* or represented, who will not obey court orders.").

### F. Meritoriousness of the Claim

Finally, the Magistrate Judge found that because Plaintiff's claims had not been tested by motion practice it was "unclear whether . . . [they] have merit." (ECF No. 32 at 9.) As a result, the Magistrate Judge concluded that this factor was "neutral." (*Id.*)

Under *Poulis,* a claim has merit when the allegations in the pleadings, if established at trial, "would support recovery by the plaintiff . . . ." 747 F.2d at 870 (internal citations omitted). Here, Plaintiff's Complaint claimed breach of contract and breach of the implied covenant of good faith and fair dealing. (*See generally* ECF No. 1.) Plaintiff alleges that he was discharged without cause well before the end of his one-year contract of employment. (*Id.* ¶¶ 9-18.)

Defendants filed a motion to dismiss, but it was never decided. (ECF No. 13.) Setting aside the threshold arguments that the Court did not have personal jurisdiction over Defendants and that the claims were time-barred, Defendants also argued that Plaintiff had failed to state a claim because he did not allege a specific underlying contractual obligation between the parties that was allegedly breached. (ECF No. 13-1 at 33.) Ultimately, the Court is not in a position to

decide the unbriefed motion, but it notes that even accepting all of Plaintiff's allegations, the facts alleged do not straightforwardly establish that Plaintiff has a meritorious claim. While Plaintiff claims he was discharged without cause in violation of some agreement, he also alleges that the discharge occurred after Plaintiff was absent from the University for about a month in October 2015. (ECF No. 1 ¶¶ 15-18.) Presuming there was some enforceable agreement, it appears likely that there would be a dispute as to whether there was cause for the discharge. In any event, the Court concludes that this factor is neutral and is insufficient to override the preceding factors, which all weigh against Plaintiff and in favor of dismissal with prejudice.

## IV.  CONCLUSION

For the reasons set forth above, and other good cause shown, the December 12, 2022 Report and Recommendation of Magistrate Judge Tonianne J. Bongiovanni (ECF No. 32) is **ADOPTED**, and Plaintiff John Sebastian Quick's claims are **DISMISSED** with prejudice.

Dated: July 20, 2023

_____
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE